IN THE UNITED STATES DISTRICT COURT

                          FOR THE DISTRICT OF OREGON

UNIVERSAL TELECOM, INC.,                    Civ. No. 06-6222-HO
an Oregon corporation,
                                            ORDER
            Plaintiff,

     v.

THE OREGON PUBLIC UTILITY
COMMISSION, et al.,

            Defendants.


     The case arises under the Telecommunications Act (the Act) and involves the arbitration of an interconnection agreement (ICA) between plaintiff Universal Telecom, Inc. and defendant Qwest Corporation, pursuant to 47 U.S.C. § 252.  Universal filed a motion for summary judgment, a motion for preliminary equitable relief and a motion to withdraw the motion for preliminary equitable relief.  The motion to withdraw the motion for preliminary equitable relief is granted and the motion for preliminary equitable relief is withdrawn.  For the reasons discussed below, the motion for summary judgment is denied.

Background

Within the meaning of the Act, Qwest is an incumbent local exchange carrier (ILEC) and Universal is a competitive local exchange carrier (CLEC). An ILEC must provide any requesting telecommunications carrier with connection to the ILEC's network. 47 U.S.C. § 251(c)(2). LECs have duties to afford access to rights-of-way to competing providers of telecommunications services and to establish reciprocal compensation arrangements for the transport and termination of telecommunications. 47 U.S.C. § 251(b)(4) & (5).

In resolving by arbitration open issues and imposing conditions upon parties to an ICA, a state commission shall ensure that such resolution and conditions meet the requirements of Section 251, including the regulations prescribed by the Federal Communications Commission pursuant to that section. 47 U.S.C. § 252(c)(1).

The arbitrator issued a written decision adopting Qwest's proffered ICA language, except that the arbitrator modified Section 7.3.4.5 by deleting the sentence "Qwest's agreement to the terms in this paragraph is without waiver or prejudice to Qwest's position that it has never agreed to exchange VNXX traffic with CLEC" and inserting it its place "Qwest and CLEC shall not exchange VNXX traffic." AR 1504.

"VNXX" traffic is defined in the ICA.

2 - ORDER

> If CLEC's End User Customers are assigned NPA-NXXs associated with a rate center different from the rate center where the End User Customers are physically located, traffic that does not originate and terminate within the same Qwest local calling area (as approved by the Commission), regardless of the called and calling NPA-NXXs involving those End User Customers, is referred to as "VNXX" traffic.

AR 88-89 (ICA §§ 7.3.1.1.3.1 & 7.3.2.2.1).  "NPA" or "Numbering Plan Area" is also referred to as an area code.  AR 39.  "'NXX' is the three-digit Switch entity code which is defined by the 'D,' 'E' and 'F' digits of a 10-digit telephone number within the NANP."  Id.  The "NANP" or "North American Numbering Plan," means the basic numbering plan for Telecommunications networks located in the United States and elsewhere.  Id.  The NANP format is a 10-digit number consisting of the 3-digit NPA code, followed by a 3-digit NXX code and a 4-digit line number.  Id.

The Oregon Public Utilities Commission (OPUC) modified the arbitrator's written decision, adopted the decision as modified, and required the parties to file an ICA complying with the terms of the modified decision.  AR 1648.

Universal provides services to internet service providers (ISPs) by offering telephone numbers that customers of ISPs may call using their computers.  Universal converts calls from ISPs' customers to internet protocol, and delivers the internet protocol to different internet locations, as instructed by the customers' computers.

Qwest is involved in this process because the calls pass

over Qwest's network to reach Universal.  To allow this exchange of traffic, Qwest and Universal have interconnected their networks through a point of connection (POI) in each of two Oregon local access and transportation (LATA) areas.  A call that begins on one party's network but is destined for the other party's network must pass through one of the two POIs.

All traffic at issue in this case originated on Qwest's network and was terminated by Universal.

Qwest identified no issues in the petition for arbitration of the ICA submitted to the OPUC.  Universal's response identified the following issues of dispute: (1) "Whether Universal should be required to pay for facilities on Qwest's side of the [POI][,]" and (2) "Whether each Party shall be entitled to receive reciprocal compensation on all traffic."

## Discussion

A party aggrieved by a state commission's determination under Section 252 may bring an action "to determine whether the agreement or statement meets the requirements of section[s] 251" and 252.  47 U.S.C. § 252(e)(6).  The court determines whether the ICA complies with the Act and implementing regulations de novo.  US West Commc'ns v. MFS Intelenet, Inc., 193 F.3d 1112, 1117 (9th Cir. 1999).  The court reviews other issues under an arbitrary and capricious standard.  Id.

Universal alleges eight "counts" or "claims" of errors

committed by the OPUC. Though Universal's briefing is organized differently, the court considers the "counts" in the order presented in the complaint.

Count I alleges that the OPUC erred in concluding that Universal provides VNXX service.[1] Universal argues that it assigns NXX codes to ISPs rather than to customers physically located in a foreign rate center, computer modems send digital signals over Qwest's facilities to one of two POIs, and the calls are destined for the Internet, which is not defined by narrow "calling areas." The arbitrator's decision reveals a solid understanding of the points emphasized by Universal. AR 1651-52.

In a related argument, Universal contends the OPUC violated its due process rights by prohibiting it's use of so-called VNXX arrangements without providing an opportunity to develop a factual record and to explain the application of federal law to the facts. Universal alleges no distinct claim for violation of its right to due process. The court's determination is limited to whether the ICA meets the requirements of Sections 251 and 252. As discussed below, the OPUC could consider the legality of VNXX service, could lawfully prohibit VNXX service as described in the arbitrator's decision, the OPUC order approving the

---

[1] Paragraph 44 of the complaint alleges that the arbitrator and the OPUC found that Universal provides only VNXX service. Universal does not address this allegation in its filings. The record does not support the allegation.

5 - ORDER

decision and the ICA. To the extent Universal does not provide VNXX service prohibited by the ICA, Universal is not an aggrieved party.

Count II alleges that the OPUC bars Universal from providing interstate or intrastate telecommunications services, in violation of U.S.C. § 253(a). To the extent this court has jurisdiction to consider this claim, the OPUC's decision to ban VNXX as defined in the ICA or described in the arbitrator's decision and the OPUC's order does not bar Universal from providing telecommunications services. Global NAPs, Inc. v. Verizon New England, Inc., 454 F.3d 91, 102 (2nd Cir. 2006).

Count III alleges that the OPUC improperly determined the legality of services provided by Universal, because the parties did not raise this issue. A state commission shall limit its consideration to the issues set forth in the petition for arbitration and the response. 47 U.S.C. § 252(b)(4)(A). The court does not read this provision to require a state commission to approve prohibited arrangements. AR 1644. The OPUC properly reached the issue of the legality of VNXX services in the course of considering the two issues identified by Universal in its response to the petition for arbitration: whether Universal must pay for facilities on Qwest's side of the POI, and whether each party shall receive reciprocal compensation on all traffic. Pacific Bell v. Pac West Telecomm, Inc., 325 F.3d 1114, 1130,

6 - ORDER

n.15 (9th Cir. 2003); see also Bell South Telecommc'ns, Inc. v. Cinergy, Commc'ns Co., 297 F. Supp. 2d 946, 951-52 (E.D. Ky. 2003).

Counts IV and V allege that the OPUC failed to follow Ninth Circuit authority holding that all ISP-bound traffic, including "non-local" traffic, is subject to reciprocal compensation requirements under Section 251(b)(5).  Count VI alleges that the OPUC's ruling on reciprocal compensation for ISP-bound traffic amounts to an impermissible regulatory taking.  Universal appears to rely on Pacific Bell, 325 F.3d at 1130, 1131.  Memo. at 32, n. 94; Reply at 15.  The court held only that a decision of the California Public Utilities Commission to enforce an arbitration agreement that subjects ISP-bound traffic to reciprocal compensation was not inconsistent with Section 251.  Id.  ISP-bound traffic is not subject to the reciprocal compensation requirement of Section 251(b)(5).  Verizon California, Inc. v. Peevey, 462 F.3d 1142, 1158 (9th Cir. 2006).  To the extent the court has jurisdiction to entertain a regulatory takings claim, Universal demonstrates no protectable property interest in compensation for its termination of ISP-bound traffic.

Counts VII and VIII allege that the OPUC erroneously determined that Qwest can impose recurring and nonrecurring

charges on Universal for Qwest's delivery of traffic[2] to the POI. Universal specifically alleges that the determination contradicts a Ninth Circuit[3] ruling that traffic subject to reciprocal compensation is not subject to these "origination" charges. Complaint, ¶¶ 75-77, 80-82. Universal relies on 47 C.F.R. § 51.703(b). "A LEC may not assess charges on any other telecommunications carrier for telecommunications traffic that originates on the LEC's network." This regulation applies "to reciprocal compensation for transport and termination of telecommunications traffic between LECs and other telecommunications carriers." 47 C.F.R. § 51.701(a). As discussed above, ISP-bound traffic is not subject to the reciprocal compensation requirement of Section 251(b)(5). Further, within the meaning of the reciprocal compensation regulations, telecommunications traffic does not include "exchange access, information access, or exchange services for such access . . ." 47 C.F.R. § 51.701(b). ISP-bound traffic is "information access." Level 3 Commc'ns, L.L.C., v. Colorado Public Utilities Comm'n, 300 F. Supp. 2d 1069, 1076 (D. Colo. 2003). VNXX traffic as defined in the ICA and described by the arbitrator and the OPUC is "interexchange access." See Peevey,

---

[2] Universal is concerned with ISP-bound traffic. Memo. at 32.

[3] Again, Universal appears to refer to Pac Bell, 325 F.3d 1114. Memo. at 38-39.

8 - ORDER

462 F.3d at 1157-58.  The regulations cited by Universal do not prohibit imposition on Universal of charges for transporting ISP-bound traffic to the POI.

## Conclusion

Based on the foregoing, Universal's motion for summary judgment [#26] is denied; Universal's motion to withdraw motion [#60] is granted.  This action is dismissed.

IT IS SO ORDERED.

Dated this ___15th___ day of November, 2007.


                                                __s/ Michael R. Hogan__
                                                United States District Judge